McGirk, C. J.,
delivered the opinion of the Court.
Action of detinue for a slave — -judgment for plaintiff in the court below.
This case is presented to the Court by a hill of exceptions — the decimation has only one general count. The hill of exceptions shows, that in 1806, in December, in the State of Kentucky, one James H. Audrain married the daughter of Wells, and that, in that same year, Audrain moved to Port Wayne, and took the slave in question with him. That when Audrain was about to leave Kentucky for Port Wayne, with this slave, Wells, the plaintiff, called on some of his family to hear witness that the slave, Kate, was only lent to Audrain, and not given. That Au-drain, in the year 1807, came hack to Kentucky and lived with Wells till June, 1809; that then he left Kentucky and came to St. Louis; that in 1810 Audrain moved to Port Osage, on the Missouri; that Audrain brought Kate to St. Louis with him and kept her till 1812, when he removed to Kentucky and left his property in this country, and Kate also was left. That while Audrain was at Port Osage, he and his brother Francis Audrain, became indebted to one Cottle, for stock, to the amount of ?2,000, for the security of which they gave Cottle their joint and several notes. That James Audrain sent Francis hack to this country as his agent, with authority to collect and take care of his property, and sell it and pay his debts, and particularly the debt due to Cottle, with instructions to send Kate to Gen. Wells, in Kentucky. Francis Audrain, in pursuance of said authority, came on and sold some of Jariies5 stock to Cottle, in part payment of said debts due to him; that Cottle sued Francis and recovered judgment against him for the balance of the debt aforesaid; and, to satisfy the execution, Francis, having no property of his own, delivered Kate to the Sheriff) as James’ property, to he sold to pay the debt. The Sheriff sold Kate, accordingly, as property of Francis, and Rufus Easton, under whom the defendant claims, became the purchaser. The bill of exceptions also shows that when Audrain left Kentucky, in 1809, for St. Louis, he executed to Wells an instrument of writing, in the following words and figures, to wit: June 19th, 1809. For the hire of a negro girl, named Kate, that I have this day hired of Gen. Samuel Wells, his heirs or assigns, the just and full sum of $42 per year, making S3 50 per month, from the present date, until I return the said negro girl. It is clearly understood, that I am to pay three dollars and fifty cents per month for Kate’s services, to clothe her, pay tax, and return her at any time when called on by *12 Gen. Samuel Wells for that purpose. Witness my hand and seal, the day and year above written. That at this time James was indebted about $2,200, and owned properly to the amount of about $2,000, principally in whiskey. It was also proved that, before the Sheriff’s sale, Wells had demanded Kate of Audrain. The defendant gave in evidence, on the hack of said instrument, of hiring, as follows : In consideration of the within slave having been sold under some process of law, and of my having brought suit to recover her from the present holder, a certain James Irwin, I do hereby release the said James H. Audrain from liability to return the said negro woman to me, and also to release him from the payment of the hire mentioned in the within receipt from the time the said slave was taken under the process above referred to, and her services became lost to the said James p. Audrain. Witness my hand and seal, June 18th, 1818.
As to the error alledged respecting the release, this Court see no cause of reversal.
The next point relied on is, that the Circuit Court erred in permitting the plaintiff to give evidence of a demand of the slave of Audrain, such demand not being alledged in the declaration. To sustain this ground, the appellant relied on the case of Gordon o. Harper, and on 1st Chilly, 322, and 2d do. 235.
In the first case relied on, the plaintiff in fact had not the possession, nor the right of possession, when he commenced his action, and had only a revertionary interest in the chattels upon which the trespass, in that case, was committed.
That action was to recover for the injury done to the possession. The plaintiff' had not the possession, nor the right thereto, therefore he could not recover.
The authority from 1st Chitty, 322, shews, that whenever a previous demand is necessary to the incipiency of an action, that demand must be specially laid; and if laid, jnust he proved, and if not laid, cannot be proved, however necessary it might he to the maintenance of the action. It cannot he doubted, where there is a bailment which is to end on the request of the bailor, an action will not lie by the bailor against the bailee, without a request laid and proved. This doctrine cannot apply to the question before the Court. If A. hail goods to B., and C. get them by any other mode than by a privity of consent, no request by A. to C, to maintain detinue is necessary.
In the case between Wells and Irwin, no privity exists. This Court cannot see there is any error in the record on this point. The defendant, among other things, requested the Court to instruct the jury, “ that if, in this case, they believed Samuel Wells, the plaintiff, intended, at the time of letting the negro woman Kate go away with James H. Audrain and his wife, that the negro woman should always, after that time, continue with the said Audrain and his wife, as their own servant, and executed the said instrument of hire for the mere purpose of preventing the said negro woman from being liable for the debts of said Audrain, and without any intention of ever exacting the hire, or taking the said negro woman away from the service of the said Audrain and wife, that then said instrument of writing was void, and the said negro woman absolutely Audrain’s property.” On this point, the Court gave no express instruction. But it is contended by the appellee’s counsel, that the instructions given, embrace this point. This Court think otherwise. Let it be assumed as correct law, that where the possession of property is severed from the secret right reserved, it is at all times evidence of fraud, and in some cases, fraud per se; and that whenever the law ascertains the secret intention to he only to furnish a cover to effect some unlawful object, it declares the transaction, as to all. mankind, void; hut *13 as to the parties, the law will help neither, and leaves them precisely where they put themselves; so that he who gains an advantage in such transaction will he permitted to keep it; for the maxim is, in pari delicto melior est conditio defendentis.
Here the instruction required, proposed a case warranted by the state of the case, which was in effect and in law, that if the jury found this instrument of hiring was only a contrivance to cover some ulterior illegitimate object, that then this instrument of writing is void in law. If the jury had thus found, or thus believed, then this transaction would have assumed the decided character of a gift to Audrain, and then the property would have been absolutely Ms ; and then the jury, if they had obeyed the mandate of the law of the land, could not have said the defendant detained the plaintiff’s property, and thus there would have been a different verdict in this case.
The Court conceive the instructions required ought to have been given in terms, or in substance. The Circuit Court assume the ground, in this case, that this instruction would only have been proper in case the defendant had entitled himself to the character of a purchaser from Audrain, either in fact or in law. That proposition is erroneous, otherwise, what becomes of the defendant’s right in an action of detinue to prove property in a third person; and it is not necessary for a defendant, to entitle himself to the instruction required, to derive any title from Audrain, any more than it is in ordinary cases to require the defendant, before he is permitted to prove property in a third person, to derive a title under him.
This Court, in the instructions given by the Cucuit Court in this case, cannot see any thing which meets the instruction required, but, on the main point, the reverse. It is not discoverable to us, why Irwin should not avail himself of the beneft of the true character of the transaction; and, because the instructions required were not given, let the judgment be reversed, and remanded to the Circuit Court for a new trial; and let the Circuit Court be instructed, if on the trial of this cause the point comes.up again, to instruct the jury, substantially, .in pursuance of this opinion,