R. H. TYLER ET AL., Appellants, v. ABRAM LARIMORE, Respondent.

Kansas City Court of Appeals, November 23, 1885.

1. CONTRACTS—WHEN NOT ENFORCEABLE.—Contracts which contravene the provisions and policy of statute law ; or are repugnant to principles of sound policy ; or founded in fraud, are not enforceable, either at law, or in equity.  A contract of sale, neither prohibited by any · positive law nor against good morals may, nevertheless, be void, as being contrary to principles of sound policy.  "Whenever the divine law, or the positive law, or the common law prohibits the doing of certain acts, or enjoins the discharge of certain duties, any agreement to do such acts, or not to discharge such duties, is against the dearest interests of society, and, therefore, is held void, for otherwise the law would be open to the just reproach of winking at crimes and omissions, or tolerating in one form what it affected to reprobate in another."  1 Story's Eq. Jur., sect. 296.

2. ADMINISTRATION—POLICY OF THE STATUTES—CASE ADJUDGED.—The manifest policy of our administration law is, that the estates of dead men shall be taken charge of,. managed, controlled and disposed of by duly constituted administrators and executors, in the manner directed by the statutes, and not otherwise.  Such administrators are under the supervision and severest surveillance of the courts of probate.   Where a compact is entered into between the heirs and the administrator, the object of which is to prevent the due course of administration and to circumvent the claims of creditors it is an unclean thing, and the courts will not touch it.   The law

leaves the parties to such contracts just as it found them. It will help neither.

3. ———— WHERE THE PROHIBITED CONTRACT IS EXECUTED—WHEN THIS WILL NOT AVAIL.—The test as to whether a demand connected with an illegal transaction is capable of being enforced is, whether the plaintiff requires to rely on such transaction in order to establish his case. If the plaintiff cannot open his case without introducing the immoral or corrupt contract, the court will not hear him. And it will not avail the party to such contract, who is complaining, that it is wholly executed by the other party and he had done all he contracted to do, when the action is bottomed on the forbidden contract.

4. PRACTICE—PARTY APPEALING MUST COMPLY WITH REQUIREMENTS OF LAW.—In an action at law, under the code, if the party appealing would have the cause reviewed, he must have asked declarations of law in the lower court. If he did not do so, and there is any evidence to support the verdict, the appellate court will affirm the judgment. And where the verdict is for the right party the court will not reverse for any technical errors.

ON MOTION FOR REHEARING.]

5. CASE ADJUDGED.—This case does not come under the rule that in an action to set aside a deed for fraud, instituted by a *third party*, the defendant cannot interpose the fraud as a defence, when such creditors are strangers to the record. The action at the bar is *founded* on the fraudulent contract, and is an attempt by one of the parties thereto to enforce its provisions against the other party. The moment that fact appears, the courts should close their doors against the complainant.

APPEAL from Audrain Circuit Court, HON. ELIJAH ROBINSON, Judge.

*Affirmed.*

*Motion for re-hearing overruled.*

Statement of case by the court.

This action is founded on the following contract:

"This agreement, made and entered into this sixteenth day of November, 1880, by and between Abram Larimore, of the county of Audrain, and Jane Larimore, of the county of Callaway, Missouri, heirs and widow of Henry Larimore, deceased, parties of the first part, and

R. H. Tyler, of Callaway county, and J. R. Baker, of Audrain county, Missouri, parties of the second part, witnesseth, that, whereas, the following land belonging to the estate and heirs of said Henry Larimore, deceased, to-wit: The southeast quarter of section thirteen, the east half of the northwest quarter of section twenty-four, and the east half of the southwest quarter of section thirteen, all in township forty-seven, range ten, west; also, the north-east quarter and southeast quarter of section twenty-four, township forty-seven, range ten, west; and, also, the northwest quarter of section nineteen, and southwest quarter of section eighteen, township forty-seven, range nine, west, containing in all 1020 acres, all situated in the county of Callaway, Missouri, to be sold on the first day of December, 1880, at public vendue, to the highest bidder, at Fulton, Missouri, under several deeds of trust, which are valid and subsisting liens on said land. Now, therefore, the parties of the first part, in consideration of the promises and covenants hereinafter made by the parties of the second part, have released and relinquished, and do hereby release and relinquish all their rights, titles, claims and interests in and to any and to all of said lands, except as herein provided, and relinquish all their right and interest in and to all or any part of the money which may arise from said sale of land under the trust deeds of December 1, 1880, as heirs and widow of the said Henry Larimore, deceased, to the parties of the second part, except that should the debts allowed against the estate of the said Henry Larimore, deceased, and mort-gaged debts hereinafter mentioned, amount to less than $18,000, the sum specified to be paid for said land at said sale, by said parties of the second part, as hereinafter mentioned, then said parties of the first part as heirs and widow, are to have their proportion of the said $18,000 that exceeds the said debts of said estate.

"And in consideration of said covenants, and relin-quishment by the parties of the first part, the parties of the second part hereby promise, undertake, and agree by bidding on said land, at said sale, to make said land

bring $18,000, or, should the mortgaged debts, and the debts allowed against said estate exceed $18,000, then said parties of the second part agree to make said land, at said sale, pay said debts, except as to the Duncan claim, which has been allowed against said estate.

" It is mutually understood, and agreed, that said parties of the second part are to make said land, at said sale, bring $18,000, and if the mortgaged debts and the claims allowed against said estate should be less than $18,000, then the parties of the second part shall pay into the hands of the administratrix the difference between said debts and $18,000 ; but if on the other hand the land should bring more than $18,000, then the difference between $18,000 and the amount which the land shall bring, or if the said debts (excepting the Duncan debt), shall exceed $18,000, then the difference between the amount of said debts and the amount which said land shall bring at said sale, shall not be paid to the administratrix, but shall belong to said parties of the second part, and shall be paid to them. It is mutually understood that none of the purchase money, as aforesaid, to be paid for said land at said sale, shall be appropriated to the payment of any claims except the mortgaged debts aforesaid, and the debts now allowed against the estate of the said Henry Larimore.

" Witness our hands and seals, this sixteenth day of November, 1880.

"Abram Larimore, [seal.]
"Jane Larimore, [seal.]
"R. H. Tyler, [seal.]
"J. R. Baker, [seal.]"

The petition was filed by Tyler and Baker, the parties of the second part, against Abram Larimore, one of the parties of the first part. After stating the substance of the contract, the petition avers that the land was sold at said sale, and brought about $24,000, which was paid by plaintiffs to Jane Larimore, who was the widow and administratrix. That after said incumbrances and debts were paid, there remained a surplus, subject to the pro-

visions of said contract, of about $6,000, to be distributed among the heirs ; that under said contract the plaintiffs were entitled to said sum, but the administratrix had paid over the same to the heirs, the defendant receiving thereof the. sum of $1,500, for which judgment is asked.

The substance of the answer is a general denial.

Among the more important facts which the plaintiff's evidence tended to show at the trial, had before the court without the intervention of a jury, are the following :

"That at the time this contract was ' entered into, Henry Larimore had been dead ; letters of administration had been granted his widow, Jane Larimore, and notice of such letters had been published for more than one year.

" That said deceased died intestate, leaving his said widow and four children, viz.: defendant, Abe Larimore, the wives of each of the plaintiffs, and one other daughter, the wife of Miller, and that the said widow had, previous to said contract, elected to take a child's part in the estate of deceased in lieu of dower therein.

"That said deceased died seized of the real estate described in said contract, and about two hundred and forty acres of land situate in Audrain and Callaway counties, in addition thereto ; said lands in said contract described being subject to certain deeds of trust to secure notes executed by deceased in his lifetime, amounting to about $9,000.

" That there had also been allowed against the estate of said deceased, debts amounting to about $9,334.82, in addition to said secured notes.

" That at the date of said contract there was a deed of trust on defendant's land to secure a note of $2,000 made by deceased in his lifetime, which had been allowed against his estate.

" At said date it was considered by the heirs doubtful whether the estate of said deceased would be sufficient to pay the debts owing by the estate.

"That at the date of the contract the land therein described was advertised to be sold under certain of said deeds of trust, on the first day of December thereafter, and the heirs of deceased were fearful that said land would be sacrificed at said sale. That at this time land in Callaway county was low in value, and but few sales made, though then increasing in value.

"That at said trustees' sale plaintiffs requested that all the land be sold, but the trustees refused to do so, but only sold enough to pay the debts secured by said deeds of trust.

"That at said trustees' sale plaintiffs bought all the said land offered for sale by the trustees, and paid therefor the full value, viz.: the sum of $11,012.

"That plaintiffs had arranged for the money to the amount of $18,000, to purchase said land, which they had to borrow.

"That the whole of said land was not sold by said trustees, at said sale, only four hundred and seventy acres being sold.

"That afterwards, on the seventh day of November, 1881, the balance of the land described in said contract was sold by the administrator under an order of the probate court of Callaway county, to pay the debts of said estate, at which sale plaintiffs purchased the balance of said land, except forty acres, and paid therefor the sum of $13,455, which was paid to said administrator.

"That after the debts had been so paid a surplus arising from said two sales, remained in the hands of the administrator, one-fifth of which said administrator paid to defendant.

"That afterwards said forty acres of land was sold at a sale for partition among the heirs, and plaintiffs bought the same.

"That at the time of the administratrix sale of the balance of the land described in the contract, the land sold at said sale was more valuable than at the date of the trustees' sale."

The defendant offered evidence tending to prove the following facts:

"That at the date of the contract the estate of H. Larimore, deceased, was considered by the heirs sufficient to pay all the debts owing by it.

"That at the trustees' sale, on the first day of December, defendant notified plaintiff, Tyler, that he did not consider that plaintiffs had come up to their contract, and he would treat it at an end. This was on the day of sale, and just after it had been made.

"That at said trustee's sale said land brought no more than its market value.

"That the estate of H. Larimore, deceased, at the time of his death, and when the contract sued on was made, was supposed by the parties to said contract to be largely indebted to parties known as the Curtis heirs, living in Virginia, to-wit: in the sum of about $30,000.

"That the contract sued on by plaintiffs was entered into for the purpose of defeating said Curtis heirs in the collection of their claim and in fraud of creditors.

"That the balance of the land described in the contract, sold at the administratrix's sale, brought less than its real value."

The court found the issues for defendant, and plaintiffs have brought the case here by appeal.

MACFARLANE and TRIMBLE, with whom is I. W. BOULWARE, for the appellants.

I. It may be admitted that before a recovery can be had at law on a special contract, a strict performance of all material matters on the part of the plaintiff must be shown. But in this case the *time* was not material. The rule that *at law*, time will always be regarded as of the essence of contracts, has reference entirely to executory contracts, in which performance by one at a particular time is a condition precedent to performance by the other. Under this contract defendant had already relinquished his interest in the land, and assigned it to plaintiffs, and nothing remained for him to do. The evidence does not authorize a rescission, and defendant does not plead or prove its invalidity. *Russell v. Ins. Co.*,

.55 Mo. 592; *Milton v. Smith,* 65 Mo. 322; Story on Eq. Jur., sect. 776; *Clute v. Jones,* 28 N. Y. 282.

II. In performing their part plaintiffs did eveiything equity would require of them. Under the facts they would have been entitled to a specific performance if the contract had been left executory. The release and assignment stand valid and binding on the defendant. Story Eq Jur., sect. 775, and note; *Jones v. Robbins,* 29 Me. 351; *Spinn v. Roberts,* 1 Spencer 435; *Melton v. Smith,* 65 Mo. 315. Defendant cannot attack for fraud. *Hamilton v. Sculls, Adm'r.,* 25 Mo. 165; *Howell v. Stewart,* 54 Mo. 404.

I. W. Boulware, also for appellants.

I. The contract was valid, *bona fide,* based on valuable consideration, and binding on the parties. In this case time was not material nor of the essence of the contract. 2 Addison Cont. (3 Am. Ed.) sect. 523, and cases; 2 Story's Eq. Jur., sect. 776, and cases cited; Story on Contracts (3 Ed.) sect. 970.

II. In this case every act was done by plaintiffs, contemplated by the terms of the contract. It was also executed on the part of the defendant. His interest passed by the execution and delivery of the contract, and he had no *power* to *rescind* it. Story. on Cont., sect. 844; 1 Addison on Cont. (3 Ed.) 317; Smith on Cont. (3 Am. Ed.) side p. 335, and cases.

III. The question in this case is one of equity and not of law. Plaintiffs did everything that equity and good conscience required of them. Defendant was damaged by no default.

IV. The question of fraud was not raised by the pleadings or instructions in the court below. Nor did the evidence establish the fact. *Defendant* cannot avoid contract on account of *his* own fraud. Parsons on Cont., *supra*; *Howell v. Stuart,* 54 Mo. 404.

Forrist & Fry, with whom is O. Hitt, for the respondent.

I. The contract is void in that its consideration was

illegal, against public policy, and against the statute regulating the administration of the estates of deceased persons, its purpose being to withdraw assets from the contract of the administratrix. Rev. Stat., ch. 1, sects. 69, 75, 79, 94, 121, 122; Story Cont. (3 Ed.) 607; 1 Add. Cont. (1 Am. Ed.) sects. 259–265; 2 Kent Com. (12 Ed.) pt 5, sect. 39. *Biglow v. Stringer*, 40 Mo. 195; *State use, etc., v. Benoist*, 37 Mo. 500.

II. The contract was voidable for fraud in its inception, and respondent could avail himself of that defense under the general issue, the contract sued on being *executory* and they being a party to the fraud. Stephens Pleading (Tyler's Ed.) 175; *Hamilton v. Scull's, Adm'r*, 25 Mo. 165; *Bott v. Rogers*, 3 Paige (N. Y.) 157; *St. John v. Benedict*, 3 Johns. ch. 117; *Goudy v. Gebhart*, 1 Ohio St. Rep. 292.

III. The instructions were rightly refused, because they *ignored* this element of fraud in the case. *Mansur v. Botts*, 80 Mo. 658.

IV. The consideration for this contract was in the nature of a *condition precedent*, and plaintiffs did not perform it, confessedly, and the performance was neither waived nor prevented by defendant. 1 Wharton on Cont. (10 Ed.) sects. 557, 605; *Turner v. Mellier*, 59 Mo. 535; *Helm v. Wilson*, 4 Mo. 41; *Earp v. Tyler*, 73 Mo. 617; *Lowber v. Bangs*, 2 Wall. 728.

V. *Time* was of the essence of the contract by the terms, by the subject matter and the circumstances of the case. *Howell v. Knight*, 1 Young & Colyer, 415; 3 Parsons Cont. (6 Ed.) 383–396.

VI. This action was upon the contract, but whether upon the contractor in *indebitatus assumpsit*, the contract should determine the rights of the parties. *Mansur v. Botts*, 80 Mo. 655; *Dermott v. Jones*, 2 Wall. 9; *Eyerman v. Cemetery Ass'n*, 61 Mo. 489.

PHILIPS, P. J.—I. The first question, lying at the threshold of this controversy, is, whether the contract sought to be enforced is not void in its inception. Con-

tracts which contravene the provisions and policy of
statute law, or are repugnant to principles of sound
policy, or founded in fraud, are not enforceable, either at
law or in equity. 2 Kent Com. 466. A contract of sale,.
neither prohibited by any positive law, nor against good
morals, may nevertheless be void as being contrary to
principles of sound policy. *Jones v. Randall*, Camp.
39 ; *Brye v. Lewis*, Ry. & Mor. 386. Judge Story very
succinctly and forcibly comprehends this principle in this
statement: " Whenever the divine law, or the positive
law, or the common law prohibits the doing of certain
acts, or enjoins the discharge of certain duties, any agree-
ment to do such acts, or not to discharge such duties, is
against the dearest interests of society, and, therefore, is
held void ; for, otherwise, the law would be open to the
just reproach of winking at crimes and omissions, or tol-
erating in one form, what it affected to reprobate in
another." 1 Story Eq., sect. 296.

So contracts violative of the policy of an act of par-
liament, or looking to the withdrawal of assets of a bank-
rupt from the course of the bankrupt act, or for the eva-
sion of other public laws and duties are illegal and void.
1 Add. Cont., sects. 259–260.

The manifest policy of our administration law is,
that the estates of dead men shall be taken charge of,
managed, controlled and disposed of by duly constituted
administrators and executors, in the manner directed by
the statute, and not otherwise. Such administrators are
under the supervision and severest surveillance of the
courts of probate.

The office of an administrator is essentially a trust.
He receives and administers the entire assets of the estate,
solely to protect the interests of the heirs and distribu-
tees, and the creditors of the estate. On the death of
the intestate, the personal property goes directly to the
administrator, and not to the heir.

All monies arising from the sales of real estate, made
pursuant to an order of the probate court, go to the
administrator, to be distributed and accounted for as the

court may order.   All surplus monies arising from fore-closure sales under mortgages and deeds of trust, exe-cuted by the intestate, go to the administrator, to be inventoried and accounted for.    And all creditors of the estate have two years after grant of letters of adminis-tration, and due notice thereof, in which to present their demands for allowance.

Now what do we find in the record before us ?   The two years have not expired for the allowance of claims against this estate.   The intestate died seized of a large and valuable real estate.   About 1,020 acres were cov-ered with mortgages to secure debts amounting to about $9,000.   There had been allowed against the estate about $9,344 of unsecured claims.   In addition to which, so the contract in question recognizes, there were other out-standing claims for large sums against the estate, or at least which the parties to the contract anticipated would be presented for allowance within due time.   When the administration had run only little over one year, and the mortgagees were about proceeding to foreclose, the heirs, the parties to this contract, including the administratrix herself—the trustee of both the estate and the creditors—meet and enter into compact, the evident object of which was to prevent the due course of administration, and to circumvent the claims of creditors.

If the sole purpose of the parties to this scheme were, as suggested by counsel, to prevent a sacrifice of the land, and protect the interest of the heirs, by making the mort-gaged land pay off the mortgage debts and the probated claims, what was the need of the written compact ?   Why was it deemed needful for the plaintiffs to take a written assignment of the interest of the other two heirs ?   Could they not have bid as much for the land without as with the contract ?   On its very face, to say nothing of its deeper meaning, the judicial eye must readily discover the prime motive.

In the first place we discover on the face of the con-tract, a declared purpose that one claim, already allowed by the court as a debt against the estate in favor of one

Duncan, was not to be paid by the administratrix. It is next stipulated, that if the lands to be sold under the trust deeds brought $18,000, and the mortgaged debts and claims then allowed should be less than $18,000, then the plaintiffs, condescendingly, stipulated to pay the difference into the hands of the administratrix. Why contract to pay this money into her hands? The money arising on the foreclosure sale would legally be paid by the purchaser over to the trustee. It would then have become the plain duty of the administratrix to have demanded this surplus of the trustee, and it would have been the plain duty of the trustee, after satisfying the trust, to have handed the surplus over to the administratrix.

The truth strikes us at every corner of this instrument that the parties undertook to take the land and the estate out of the due course of law and justice, and administer it among themselves, so that any surplus fund might not be exposed to the dreaded Curtis claims.

If there could be any reasonable doubt as to the justness of the deduction made, it must disappear on reading the succeeding provision of this contract. If the land should bring more than $18,000, then the difference between that sum and the amount of said debts (i. e., the mortgage, debts and the claims already probated, barring the Duncan claim) "shall not be paid to the administratrix, but shall belong to said parties of the second part (the plaintiffs), and shall be paid to them."

Here then, we have a bold, solemn compact in writing between the heirs, including the administratrix, stipulating that two of the heirs shall have this land at $18,000, provided no obtrusive outsider should enter the competitive list; but if there should be such competition, the plaintiffs could run it up indefinitely, for the administratrix and the other heirs covenant that the administratrix will abandon her high office as trustee for the time, by not claiming any surplus over $18,000, so the heirs can lug it off out of the reach of distant creditors. And, as if infatuated to judicial and moral blindness with the

conception of the scheme to administer this estate out-side of the due course of law, so as to divert the assets, they became so bold as to add this closing climax: "It is mutually understood that none of the purchase money, as aforesaid, to be paid for said land at said sale, *shall be appropriated to the payment of any claims,* except the mortgage debts aforesaid and the debts now allowed against the estate of the said Henry Larimore."

This being the declared object on the face of the con-tract, that some creditors were designed to be left out, the parol evidence introduced by defendant merely named the parties struck at, and supplemented the fraudulent animus already apparent on the very face of the paper. Here, then, is a contract between an administratrix and the heirs to so manage a sale of the real estate—and ac-cording to plaintiffs' contention it makes no difference whether the money arose from foreclosure outside of court, or under a sale made by the administratrix under an order of the probate court—that no surplus shall be ap-plied except as they stipulate. No other claims are to be paid except such as they consent to. The law governing the administration of dead men's estates, the rights of creditors, the duties and statutory obligations of the ad-ministratrix, are all cast aside, with an abandon that is almost admirable for its audacity; and then the plaintiffs —parties to this contract—come into court and ask that they be helped to reap the fruits of this vicious com-pact.

It is an unclean thing, and the courts will not touch it. The law leaves the parties to such contracts just as it found them. It will help neither. *Allison v. Hess,* 28 Iowa 389; *Bartle v. Nutt,* 4 Pet. 184; *Irwin v. Wells,* 1 Mo. 9; *Hamilton v. Scull's Adm'r,* 25 Mo. 166-7.

II. Counsel for appellants seek to meet this ugly fea-ture of the case by the suggestion that the contract is wholly executed by the one party, the defendant, when he and Jane Larimore executed the instrument, as they had then done all they contracted to do. This rule will not avail the plaintiffs in this instance. Their action

is bottomed on the forbidden contract. They plead it in their petition, and put it in evidence at the trial. Without it they would not have one grain of sand on which to stand.

The test—says Chitty Cont. (11 Ed.) 972—as to whether a demand connected with an illegal transaction be capable of being enforced is, whether the plaintiff requires to rely on such transaction in order to establish his case. If the plaintiff cannot open his case without introducing the immoral or corrupt contract, the court will not hear him. *Duncan v. Scott,* 11 Ser. & R. .164; *Thomas v. Brady,* 10 Barr. 170; *Holt v. Green,* 73 Pa. St. 198; *Kitchen v. Greenabaum,* 61 Mo. 110; *Watson v. Harmon,* 84 Mo.

III. It was perfectly competent to interpose the defence of the invalidity of this contract under the general issue. *Greenway v. James,* 34 Mo. 322; *Glasscock v. Young,* 79 Mo. 574.

IV. It is next claimed by appellants that defendant cannot defend the judgment of the circuit court on the ground that the contract is illegal, as the defendant asked no instruction to that effect. This is an entire misconception of the rule of practice. The defendant recovered judgment; he is not appealing. In the action at law, under the code, if the party appealing would have the cause reviewed, he must have asked declarations of law of the lower court. If he did not do so, and there is any evidence to support the verdict, the appellate court will affirm the judgment. *Kurlbaum v. Roepke,* 27 Mo. 161; *Altum v. Arnold,* 27 Mo. 264; *Easly v. Elliott,* 43 Mo. 289; *Cunningham v. Snow,* 82 Mo. 587; *Harrington v. Minor,* 80 Mo. 270.

All the instructions asked by appellants wholly ignored the issue tendered by the pleadings and the evidence as to the fraudulent character of the transaction. Instructions should be predicated of all the issues and evidence in the case. But it is wholly immaterial what the instructions are, the verdict is for the right party, and in such case the court will not reverse for any technical errors.

V. I am of the opinion that the merits of the case are with the defendant on the other branch of it on which the principal contest seems to have been made at the trial. The money sought to be recovered in this action did not come into defendant's hands on account of the sale contemplated by the parties. It was the product of another and wholly different sale, conducted under the auspices of the probate court, made by the administratrix, and a year after the trustees' sale had passed, and subserved its purpose.

But we prefer to place this affirmance on the higher ground of stamping our disapprobation on such contracts as this. The discouragement of such attempts we think important for the preservation of the integrity of administrations, and the prevention of fraud and injustice.

The judgment of the circuit court is, therefore, affirmed. All concur.

## ON MOTION FOR RE-HEARING.

PHILIPS, P. J.—I. It is claimed that the creditors alone could complain of the fraudulent contract in question ; and that in this respect our opinion is in conflict with that of the supreme court in *Steadman v. Hayes*, 80 Mo. 323. This is a misconception of the attitude of the case at bar. The Steadman case but asserts the familiar rule, that in an action to set aside a deed for fraud instituted by a third party, the defendant cannot interpose the fraud as a defence, when such creditors are strangers to the record. It does not hold that where A has conveyed his land to B, solely to defraud his creditors, in an action by A to recover this land, B may not plead the fraudulent purpose of the transaction. In such case the courts will afford no relief, but will leave the parties to the fraud precisely where their mutual wrong has placed them. *Brown's Adm'r v. Finley*, 18 Mo. 375. So in *Hamilton v. Scull's Adm'r* (25 Mo. 165), it is held to be a good defence to an action on a promissory note that it was given in furtherance of an attempt to defraud defendant's creditors.

. The action of the bar is founded on the fraudulent contract, and is an attempt by one of the parties thereto to enforce its provisions against the other party. The moment that fact appears the courts should close their doors against the complainant.

II.   It is further suggested that this court overlooked the fact that the circuit court granted to plaintiff an instruction, to the effect that the contract in question is valid. The fact was not overlooked. It was not commented on in the opinion because of the well recognized rule that where the judgment of the trial court, on the whole record, is for the right party, and especially so where the court tries the case without the intervention of a jury, this court will not reverse the case because of some misconception of the law by the trial court. The plaintiffs were not entitled to the instruction accorded them. It does not lie in their mouths to assign for error on appeal that a verdict is inconsistent with a declaration of law wrongfully accorded at their instance. *Crews v. K. C., St. Jo. & C. B. R. R. Co., Ante*, P. 302.

Nor can we perceive the force of the objection, now interposed by this motion for a re-hearing, that by the action of the court in so declaring the law respecting the validity of the contract, all questions of fraud were eliminated from the case, or that plaintiffs could thereby have been induced to forego the introduction of any evidence in its possession touching the integrity of the contract. This declaration of law, of course, was not made until all the evidence was in and both parties had rested. And as the vicious character of the contract appeared on the face of the contract itself, it was not competent for the trial court to bind this court by any construction it might give to its legal effect and character, so as to preclude us from affirming its judgment on the ground that on the whole record its judgment was for the right party. The defendant's evidence tended to show that the contract was conceived in fraud. The plaintiffs did not controvert the fact; but relied upon their misconception of the law. By the record, as they left it, we determine their appeal.

III. It is also urged that we overlooked the facts that before the final trial in the circuit court the statute of limitation had run against any outstanding claims against the estate, and that all debts had been paid and the money distributed.

Waiving any discussion as to the legal effect of such fact on the contract, it is enough to say there is nothing in the record indicating that between the time of the execution of the contract and the expiration of the two years within which such claims might have been probated, the outstanding claims were not presented and allowed. As to the other facts assumed, the record wholly fails to show that all the debts had been paid or all the money had been distributed. The clear inference, on the contrary, from plaintiff's evidence is, that the debts paid were those provided for in the contract; while the only money shown to have been distributed was that paid over to defendant. Nor is there anything in the record to preclude the inference that the money so received by defendant might not be called for by the administrator to respond to debts allowed against the estate.

IV. Counsel also call our attention to certain other proceedings had in one of the circuit courts on a controversy growing out of this contract between these same parties, and the action of the circuit court thereon, and the fact that the issues therein are pending on appeal in the supreme court. These are wholly matters *in pais*, not appearing on this record. If they did so appear we possibly might feel embarrassed to differ from the *nisi* court, but certainly would not be concluded by any opinion it might entertain. And as to the supreme court, while we try to follow where it has led, we cannot do so by anticipation. We assume in advance that there will be no conflict between its conclusion, arising on the same state of facts, and that reached by this court.

The motion for re-hearing, the other judges concurring, is overruled.