RUFUS SUITS, Respondent, v. EDWARD G. TAYLOR, Appellant.

Kansas City Court of Appeals, January 4, 1886.

1. CONTRACT—EXPRESS AND IMPLIED PROMISES.—The law will not *imply* a promise when there was an *express* promise; so the law will not imply a promise of any person against his own express declaration, because such declaration is repugnant to any implication of a promise.

2. ——— PRACTICE—PROOF ON TRIAL—RECOVERY.—A party may sue on a *quantum meruit*, and at the trial prove an express contract, but, in such case, his recovery will be limited and controlled by the terms of the express contract.

3. ——— AGREEMENT TO SERVE GRATUITOUSLY.—Where a person agrees to serve gratuitously, no promise to pay a reasonable compensation can be implied ; and where a person serves under an agreement, or upon the understanding that the payment of compensation shall depend upon the happening of a certain contingency, which contingency does not happen, no recovery can be had, however beneficial the services may have been.

APPEAL from Jackson Circuit Court, HON. F. M. BLACK, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action to recover for services alleged to have been rendered defendant by plaintiff. The petition contained two counts. The first alleged that in January, 1882, the plaintiff made a voluntary assignment for the benefit of creditors to the defendant, as assignee, of a lot of goods in Kansas City. That defendant took possession of the goods as such assignee, and employed the plaintiff to assist him in disposing of the same, and agreed to pay him for such services at the rate of two hundred dollars per month. That plaintiff performed such services for two months, amounting to four hundred dollars, for which he asks judgment. The second count was for a

*quantum meruit* for said services, asking judgment for the same sum.

The answer was a general denial.

The plaintiff's evidence tended to show that the defendant employed him on the terms alleged in his petition, and that he performed the services.   He also made proof of the value of the services.

The defendant's evidence tended to show the following state of facts : The plaintiff stated to defendant that he proposed making an adjustment with his creditors, by offering a certain per cent.   He proposed to have the claims assigned to himself, and then have the assignee sell the property through an order of the court, and have it bid in for his benefit, and thereby get his property back into his own hands.   In order to keep the property and the business in good condition for him he proposed to stay with plaintiff to aid in the sales, "and keep the stock in shape."   Defendant agreed to keep him, with the understanding that if plaintiff effected the settlement, as expected, so as to get the property back, defendant was not to pay him anything.   If no compromise was effected, so that the whole property would have to be disposed of in the usual way under the assignment, the plaintiff was to receive from defendant, as assignee, the sum of two hundred dollars per month for his services, provided such amount should be approved by the court. That plaintiff stayed there only a part of the time claimed for, being absent in New York trying to effect a settlement with his creditors.   The plaintiff did succeed in making such settlements, and buying up the claims, and had defendant to obtain an order of court for the sale of the goods, under which they were sold, and were bought in by one Saltsman, at plaintiff's instance, and for his benefit.

Saltsman furnished no money, but acting for plaintiff turned the goods over to him.   Sometime during plaintiff's stay in the store defendant paid him, at different times, the sum of one hundred dollars.   When defendant went to make his settlement with the court

as assignee, he applied to plaintiff, and obtained from him a receipt for this money, on account of services.

There is some uncertainty, from the evidence, as to whether this money was loaned by defendant to plaintiff, or was advanced to him on account of his services. The plaintiff denied all knowledge of the transaction. The defendant testified that on taking plaintiff's receipt, after the goods were all disposed of, the plaintiff made no claim whatever for any services, although he knew defendant was making his final settlement with the court as assignee.

The plaintiff in rebuttal testified that the goods were bought in at the sale by Saltsman for the benefit of plaintiff's wife, and were turned over to her and not to plaintiff. Plaintiff claimed that he had obtained from his wife money with which to effect said settlements with his creditors and paid her off in this transfer.

Plaintiff also testified that he did not succeed in making an adjustment with two of his creditors, who attacked the purchase of the goods made through Saltsman for his wife, and were defeated, so that the goods remained with her.

The court of its own motion gave the following declarations of law:

"1.   In order for the plaintiff to recover in this case, he is bound to show that there was a contract, either expressed or implied, on the part of the defendant to pay him for the services rendered."

"2.   Though the court should find from the evidence that there was an implied contract between plaintiff and defendant that defendant should pay plaintiff for his services, still, if the court further believes from the evidence that the defendant gave to the plaintiff one hundred dollars, and that at the end of said service when the receipt for said one hundred dollars, read in evidence, was given, it was agreed that the said one hundred dollars should be in settlement for said services, then the plaintiff is not entitled to recover anything more."

"3.   If the court find from the evidence that the re-

ceipt for one hundred dollars, read in evidence, was given by the plaintiff to defendant as a voucher for money previously given by defendant to plaintiff, and that said money was not regarded at the time it was given as for services, and said receipt was not given till after said services ha d ended, then the giving or receiving said receipt, or the giving said money, is not to be regarded as evidence to raise a presumption that there was a contract on the part of the defendant, expressed or implied, to pay for the services."

"4. The court, s itting as a jury, in considering the testimony of the plaintiff and defendant, as to whether there was a contract on the part of the defendant to pay plaintiff for the services rendered, may take into consideration the motive the defendant would have had in withholding from the plaintiff anything due to him, and if the defendant, simply acting as assignee, had no motive or personal interest in withholding from plaintiff anything due by him as such assignee, then this may be taken as a circumstance corroborating defendant's testimony that he was not to pay plaintiff for said services, and as to what his contract was with plaintiff."

The defendant asked, and the court refused to give, the following declarations of law :

"2. If the court, sitting as a jury, shall find that at the time the plaintiff entered the service of the defendant the defendant was in possession of the stock of goods assigned to him by the plaintiff, and the plaintiff stated to the defendant that he wished to make a settlement with his creditors, so that he should again get said stock of goods under his control, and that he wished to remain in the store so as to keep the stock of goods in as good shape as possible for himself, in case he should effect such a settlement, and that thereupon the plaintiff and defendant made an agreement whereby the plaintiff was to remain in charge of said goods for the defendant, and in case he made such settlement with his creditors, then the defendant was to pay him nothing ; and if the court shall further find that the plaintiff did effect such settle-

ment with his creditors, so that on March 4, 1882, said stock of goods was transferred to one Saltsman, for the benefit of the plaintiff, and that said stock of goods thereby came under the control of the plaintiff and that this was regarded by the parties at the time as such a settlement as was contemplated by them in the agreement aforesaid, then the plaintiff is not entitled to recover, and the court further declares that, though this transfer of the stock of goods was made to the said Saltsman, and not to plaintiff directly, still if it was made to Saltsman for the benefit of plaintiff, then for the purposes of this suit it was a transfer to plaintiff; and if, after the transfer to Saltsman, the stock was transferred by him to plaintiff's wife, at the direction of the plaintiff, to satisfy debts owing by plaintiff to his wife, then this is evidence that plaintiff regarded the transfer to Saltsman as a transfer for his own benefit, and for the purposes of this suit, it was a transfer for the benefit of the plaintiff.''

''3.    To entitle the plaintiff to recover upon an implied contract, the action of the plaintiff and defendant must have been such that the law will imply that it was the intention of the defendant to pay plaintiff such a sum for his services as they were reasonably worth; and if the court believe from the evidence that the plaintiff agreed to render the services upon the terms testified to by defendant, then, though said contract should be void, still the fact that a contract of that sort was made by the parties, shows that neither plaintiff nor defendant had a contract of a different kind in his mind, and this negatives the idea that there was an implied contract.''

''4.    If the court believe from the evidence that the plaintiff and defendant entered into such a contract, as that testified to by the defendant, then the plaintiff cannot recover in this suit.''

The court, sitting as a jury, found the issues for the defendant on the first count, and found for plaintiff on the second count, in the sum of three hundred dollars. Defendant has brought the case here on appeal.

WOODSON & SLAUGHTER, for the appellants.

I.   The court erred in finding contrary to the evidence. Both parties testify that there was some kind of an express contract.   *Scott v. Brockway,* 7 Mo. 61.

II.   The court erred in refusing instruction *second* asked for by defendant.   One has a right to render gratuitous services, and, of course, to make his right to secure compensation for them dependent upon the happening or non-happening of any event.   *Whiting v. Sullivan,* 7 Mass. 107; Wood's Master and Servant, sect. 66; 3 Parson's Cont. (6 Ed.) 117; *Kitchen v. Greenabaum,* 61 Mo. 110.

III.   The court erred in refusing instruction *third* asked for by defendant.   .Even if the contract was void, still the fact that a contract was made by the parties shows that neither plaintiff nor defendant had a contract of a different kind in his mind, and this negatives the idea that there was an *implied* contract.   *Whiting v. Sullivan,* 7 Mass. 107.

IV.   Contracts wholly void upon grounds of public policy, when fully executed, are generally final as between the parties.   Neither party can recover   *   *   *   unless the right is given by statute; or the contract is in violation of a statute made to protect the weak, and provides for action by such.   1 Parsons Cont. (6 Ed.) 127; .Wharton's Legal Maxims, 243, 209; *Kitchen v. Greenabaum,* *supra.*

DOBSON & DOUGLASS, for the respondent.

I.   This court will not reverse because the court below found against the weight of evidence.   The preponderance of evidence against the finding must be so strong as to raise a presumption of prejudice, corruption or gross ignorance on the part of the jury or court.   *Price v. Evans,* 49 Mo. 396.

II.   The only question is whether the finding is supported sufficiently by the evidence to sustain the judgment under the rulings of the court.   The refused in-

structions raised an issue not presented by the pleadings. The assignee, being the trustee of an express trust, and an officer of the court, and under its direction, was not competent to make such an arrangement as was testified to by him ; and it would have been the duty of the circuit court to disregard it. The plaintiff simply affirms the good faith and proper conduct of the assignment, and recovered for his services upon an implied contract to pay what they were worth. The only way in which defendant attempts to avoid this liability is by stating as a *witness* what he would not *plead* in his answer, and what the court, under no circumstances, could recognize or tolerate.

PHILIPS, P. J.—I. It is difficult to determine on what theory the trial court tried this case. It is certainly remarkable that the trial court should find there was no express contract between the parties, when both of them (and they were the only witnesses speaking to this issue) testified that there was an express agreement. They only differ as to the terms of the contract, the one contending that it was unconditional, the other that it was conditional as to whether the stipulated sum should be paid. The plaintiff, for instance, testified directly, that "the arrangement between defendant and me was, that I should manage the business, etc., and for that he was to pay me two hundred dollars a month."

In finding there was no express contract, the court, therefore, wholly discredited and rejected the statement of plaintiff. The defendant likewise testified to an express contract. By the finding of the court on the first count it would seem that it also discredited the defendant's testimony.

Respondent's counsel attempt, by a suggestion made in their brief, to justify this rejection of defendant's testimony on the ground that it disclosed a contract forbidden by law, as being contrary to public policy and good morals. But this is not tenable, for the reason that the court refused defendant's fourth declaration of law,

to the effect that if the court found such to be the contract as stated by defendant, it was void.

Where both parties claim, and all the testimony tends to show, that there was an express contract of one kind or the other, I cannot comprehend how the court could find there was only an implied contract, contrary to the understanding of both parties. "The law will not imply a promise, when there was an express promise; so the law will not imply a promise of any person against his own express declaration, because such declaration is repugnant to any implication of a promise." *Whiting v. Sullivan*, 7 Mass. 107.

II. If the contract was as stated by defendant it would control the plaintiff's recovery. If it were illegal, as contrary to public policy, as suggested by plaintiff's counsel, both parties being *in pari delicto*, the defendant could invoke it as a defence to the action of plaintiff. The moment the fact of its illegality appeared, the court would refuse relief to either party, and leave them just where their illicit agreement placed them, without any remedy in court. *Tyler et al. v. Larimore*, 19 Mo. App. 445, and cases cited, and *Green v. Corrigan*, Sup. Crt. Mo., decided this term.

It was perfectly competent, also, for defendant to introduce this proof under the general issue. There was no objection interposed by plaintiff to this evidence. The evidence went to show that the contract under which plaintiff claimed was never made, and, therefore, his cause of action under the first count, never existed. Such proof may be made under a general denial. *Greenway v. James*, 34 Mo. 328 ; *Northup et al. v. Ins. Co.*, 47 Mo. 443-444; *Tyler v. Larimore, supra.*

III. Counsel for plaintiff further undertake to justify the finding of the court on the rule that the jury are the sole judges of the credibility of the witnesses, and that there is no power in this court to coerce the judgment of the triers of the facts. This may be conceded to be the general rule. But I do not find that it has ever been so applied as to enable a plaintiff to recover on an implied

contract contrary to the express declaration of both parties that there was an express contract. A party may sue on a *quantum meruit*, and at the trial prove an express contract, but in such case his recovery will be limited and controlled by the terms of the express contract. *Mansur v. Botts*, 80 Mo. 651.

But what is a more conclusive answer to this position is that the court did not determine the case by wholly discrediting the statement of the defendant, and by wholly rejecting it as untrue. The court refused to give the instructions, or any of them, asked by defendant, predicated of the facts to which he testified. Not having presented in any instruction given the proposition of law contained in those refused, its action can only be justified on the ground, either that there was no evidence to support the instructions, or that the principles of law contained in them were incorrect. Without entering into details, it is sufficient to say, that, after a careful review of the evidence preserved in the record, we are well satisfied there was ample proof to support the second instruction.

The defendant testified directly to the contract ; and viewing the cross-examination of the plaintiff, his equivocation and lack of candor, in connection with all the other facts and circumstances in evidence, there was ample proof to warrant a jury in finding that the plaintiff accomplished practically all he proposed in the way of regaining control of the goods ; that he was the party benefited thereby ; and even if the goods were turned over by Saltsman to plaintiff's wife, it was for his benefit, as he thereby discharged a debt he was owing to her, and that Saltsman in the whole matter was acting as plaintiff's agent in fact. At all events the proofs were sufficient to demand a submission of the facts to a jury.

Although the trial was had before the court, sitting as a jury, we can only determine the theory on which the court tried the case by the declarations of law given and refused. *Wielandy v. Lemuel*, 47 Mo. 322. And the court in such case should not deny to a party declarations

of law applicable to the facts of the case. *Cunningham v. Snow*, 82 Mo. 587.

If the jury should find the facts to be, as predicated in the second instruction asked by defendant, the law would be that plaintiff could not recover. "Where a person agrees to serve gratuitously, no promise to pay a reasonable compensation can be implied, and where a person serves under an agreement, or upon the understanding that the payment of compensation shall depend upon the happening of a certain contingency, which contingency does not happen, no recovery can be had, however beneficial the services may have been. The agreement of the parties, if there be one, or if not, their understanding as to the matter of compensation, is to control, but if there be no agreement or definite understanding, and no circumstances that would repel such presumption, the law will imply a promise to pay the reasonable value of such services." Wood's Servant and Master, sect. 66.

The second and third instructions, asked by defendant, should have been given, and the court erred in refusing them. And as respondent's counsel concede, at this hearing, that the contract testified to by defendant was illegal, because "the assignee being the trustee of an express trust, and an officer for the time of the circuit court, under its control and direction, no such arrangement was permissible between him and the assignor," it would follow that the fourth instruction asked by defendant should have been given.

The judgment is reversed, and the cause remanded. All concur.