## BEN W. SMALL, Respondent, v. ERNEST LOWREY, Appellant.

### Kansas City Court of Appeals, May 27, 1912.

1. **WITNESS: Civil Case: Secreting Witness: Contract: Public Policy.** It is unlawful both by statute and from principles of public policy, to induce or deter a person from appearing as a witness in a civil case, by secreting him or placing him beyond the jurisdiction of the court, and a contract for such service is void.

2. **———: Party to Cause: Minor: Secreting Release.** Where a release of a cause of action, upon which suit had been brought, had been obtained from a minor plaintiff, and it was feared such minor might appear at the next term of court to reject the release and prosecute the action, a contract made with defendant and another for the latter, to take the minor out of the state and secrete her until the case had been dismissed, is fraudulent and against public policy, and no recovery can be had for such services.

3. **———: Unlawful Service: Knowledge: Continued Service.** If one engaged to perform a service, not unlawful, but learns soon after entering upon the performance that it is unlawful, and yet continues to the end, it taints the entire transaction, and no action can be maintained for such service.

4. **———: ———: Release: Delivery: Compensation.** If one agrees to obtain and deliver a written release of a cause of action from one party to another, and he obtains the release but does not deliver it to the defendant employing him to get it, he cannot recover compensation.

5. **———: Quaere: Inducing Party to a Cause.** Whether inducing a party to a cause, who is an adult, to keep in hiding so as not to be present when the case is called for trial, is a wrong for which no compensation can be recovered, *quaere*.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED.

*Conkling, Rea & Sparrow, Craven & Moore* and *L. H. Walters* for appellant.

*Ben T. Hardin* and *W. W. Calvin* for respondent.

ELLISON, J.—Plaintiff's action is based on a contract with defendant whereby the latter was to pay him for certain services rendered as a detective. He recovered a judgment in the trial court.

It appears that defendant's father, James L. Lowrey, residing in Boone county, was accused of a criminal assault upon Fanny Sexton, a young girl in that county, under eighteen years of age. Defendant, a physician residing in Excelsior Springs, took an interest in his father's behalf and, as plaintiff alleges, engaged the latter's services, as a detective, to assist his father. Originally both defendant and his father were made parties, but the case was dismissed as to the latter. The petition is in two counts and purports to be based upon two contracts. The first, that defendant represented that Fanny Sexton had instituted a civil suit for damages in the circuit court of Boone county, and that he engaged plaintiff to effect a settlement and release of the case. That plaintiff did procure a written release from the girl, for which service defendant agreed to pay him $450 and his expenses, on which latter item, amounting to $66.40, there had been paid sixty-five dollars, leaving a total of $451.40 still due.

The second count is for services in preventing this settlement from being set aside, and in preventing the action for damages mentioned in the first count, from being tried in the Boone county circuit court, by getting the girl out of the way, for which service defendant agreed to pay him ten dollars per day for two weeks; and that at the expiration of two weeks defendant engaged him to continue his service, in preventing the action from being tried by keeping the girl hidden, for which he was to pay him the reasonable value of his services, together with all expenses attending the service. That the service last mentioned continued for near three months, and was worth ten dollars per day, amounting to $840; and that his ex-

penses were $396.56, on which latter item there had been paid $190.

It appears from the evidence that on September 28, 1909, the date plaintiff was employed to procure a settlement, no civil action had been instituted, and that there never has been. The action was a criminal charge set forth in an indictment for rape. But plaintiff claims not to have known this until about the first of November, 1909. At any rate, he procured a written release from the girl, for fifty dollars, about two weeks after his employment. He testified that defendant then informed him that he learned the girl was under eighteen years of age and that an attempt would be made to set the release aside and go on with the case. Wherefore it was thought best to take the girl away and secrete her until the case was called at the approaching term of court, when, if she were absent and her whereabouts unknown, it would necessarily be dismissed. That in pursuance of this desire, plaintiff agreed to get her out of the way, for which service he was to be paid ten dollars per pay and his expenses. He thereupon took her to the state of Kansas, where he paid her board and other expenses, as well as nine dollars per week as wages for agreeing to keep away.

It then developed that the case was not dismissed at the term it was expected to be, and plaintiff testified he was instructed to keep the girl secreted, and that he did so up to the 8th of January, 1910.

As stated above, no civil action had been brought by the girl, and the prosecution instituted in court was an indictment for rape. Plaintiff testified that he was misled; that he all along believed, as defendant had told him from the start, that it was a civil action, and he did not know there was a criminal prosecution. He, however, became aware on November 2, 1909, from statements in a letter, that it was a criminal case, and again, from a meeting with defendant on November 22, he again came in possession of facts from which he

said "he was thoroughly satisfied" that it was a criminal instead of a civil case. Then again, on the 22d of December, he says he went to Columbia and examined the record and found it to be a criminal prosecution for rape.

We will first take up the claim stated in the second count. The face of the entire record shows a fear on plaintiff's part that the nefarious work in which he was engaged might cause the courts to refuse him aid in securing compensation for such character of service; and he therefore advances the theory that he was deceived and did not know the real purpose sought to be accomplished through his employment. He seems to have assumed from the outset that if the case was a civil one, his acts would not be reprehensible in the eye of the law. In this we think he is mistaken. To wilfully engage, for hire, single handed or in combination with others, to thwart justice, whether civil or criminal, is not only against positive statutory law, but a contract to accomplish that purpose will be refused enforcement, on the ground of public policy. [Ridenbaugh v. Young, 145 Mo. 274; Sumner v. Summers, 54 Mo. 340; Sawyer v. Sanderson, 113 Mo. App. l. c. 246; Tyler v. Larimore, 19 Mo. App. 445.] The statute (Sec. 4352, R. S. 1909) makes it criminal for anyone by bribery, menace or other means to induce any witness, or person who may be a competent witness, to absent himself, or withhold his evidence, or "deter or attempt to deter him from appearing or giving evidence in any cause, matter or proceeding, *civil* or criminal."

Doubtless it will be said that while the girl in this case, if not necessarily, would, naturally at least, be the chief witness, yet as she was a party to the action, the statute, properly interpreted, would not apply to the act of getting her out of the way. If we should concede this, it will still not leave plaintiff in a posi-

tion where he may rightly claim the assistance of the courts.

If he thought it was a civil action at the time of his original employment, and continued to think so at the time of his second employment, when he agreed to take her into another state and to prevent her appearance in court, he also knew that was desired, because she, being a minor, would be enabled to have her release of her cause of action against defendant's father set aside and thereby became enabled to obtain justice for a most grievous wrong, by the continued prosecution of her suit. Now it is plain that inducing a minor to leave the state so as to deprive him of the opportunity to receive the protection of the court before which he had an important case pending, and of asserting his rights by obtaining relief from the imposition of a pretended and fraudulent settlement, is a base and unlawful act which the courts will not countenance; and on account of public policy will refuse assistance to one engaged in such service. [2 Kent's Com. 466; 1 Story's Eq. Jur., sec. 296.] That was what plaintiff did, as stated in his own testimony. So his thinking (if he did think it) that he was doing service in a civil action instead of a criminal prosecution, does not affect his unlawful conduct. The cause is different, but the predicament in which he is left is the same.

But in truth, and his own testimony shows it, while yet engaged in the service he knew that the case was a criminal prosecution, and that the object was to secrete the girl beyond the jurisdiction of the court, in order to prevent the state from securing her as a witness. He entered upon what he calls his second service for defendant, some time after the middle of October and, as we have above stated, he learned the true character of the case on the 2nd of November, and again on the 22nd of that month, and himself himself inspected the records on the 22nd of Decem-

ber, and yet he continued in the unlawful service included in his claim until the 8th of January. So that, perhaps, five-sixths of the service which he testified was begun in innocence, was performed in guilt. By continuing in the performance of the unlawful service after knowledge of its character, he tainted the whole claim.

That he had knowledge of the character of the prosecution is further evidenced by an incident in Kansas City. He had a spirited interview in that place with one of the attorneys for the defense in the criminal case. He testified that defendant wrote him a letter from Chicago on the 3d of December stating he was starting to New York and that just after that he called upon this Kansas City attorney and made known that he had been deceived as to the character of the case on account of which he had spirited the girl away and was keeping her in hiding, and said to him that he was going to get out of the matter, that he had been misled and he wanted "the woman taken off his hands." The lawyer said, "you are guilty of an indictable offense, you are a candidate for the penitentiary, sir, and I will vote for you." And yet a part of his claim asked to be allowed, is for service performed *after that.*

The first count, as we have already seen, is for services in procuring the release of what plaintiff says he was misled by defendant into believing was a civil action in the Boone county circuit court. In our opinion the evidence, circumstances and situation all point to one conclusion and that was that plaintiff's employment from first to last was to get rid of the girl, and that the entire affair was forbidden by law and morals and that no cause of action can arise out of it. But, conceding we cannot declare this as a matter of law, so far as being applicable to and including the first count, we are satisfied that other considerations show

166 Mo. App.—8

plaintiff without legal standing. The petition charges that plaintiff was employed to get a release from the girl, and that in pursuance of such employment he got it and that it was "accepted by defendant." It is, of course, important, in case of such nature, that the accused party should have possession of the release paper. It was of the greatest importance to his future protection and it was what plaintiff agreed he should have. Yet the evidence fails to show he ever produced the release. There is nothing except his word that he ever had one. But whether he did or not, defendant says he never employed him to get one and that none was ever delivered to him; and plaintiff himself testified that he had never delivered the release to defendant and that defendant had never seen it.

The record convinces us that plaintiff has no cause of action, and the judgment should be reversed. All concur.