BRIDGET CLARKE, Administratrix of ANTHONY B. CLARKE, Appellant, v. SARAH KANE, Respondent.

**St. Louis Court of Appeals, May 31, 1889.**

1. **Practice, Appellate.** An objection to the ruling of a trial court in sustaining exceptions to a referee's report, urged upon the ground that these exceptions were not filed within the time prescribed by the statute, cannot be reviewed on appeal, when neither the date of the filing of said report nor the date of the filing of such exceptions appears from the record by bill of exceptions.

2. ———. The minutes of the clerk, copied into the transcript and showing that such exceptions were not filed in time, are not a part of the record, and will not be noticed on appeal.

3. **Practice, Trial.** Such objection comes too late, when not made in the trial court at the time of the filing of the exceptions to the referee's report, but first presented by motion for a new trial after these exceptions are sustained.

4. ———: QUANTUM MERUIT. A recovery cannot be had on an implied contract in opposition to an express contract in force, fixing the rights of the parties.

*Appeal from the Lawrence Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*Norman Gibbs*, for the appellant.

(1) The finding of the referee is to be taken with the same effect as a verdict of a jury. *Smith v. Crews*, 2 Mo. App. 269; *Gimbel v. Pignero*, 62 Mo. 240. This court will not review the evidence in a cause tried before a jury. *Sage v. Reeves*, 17 Mo. App. 210; *Sherer v. Rischert*, 23 Mo. App. 275; *Moore v. Railroad*, 73 Mo. 438; *State v. Brokerage Co.*, 85 Mo. 411; *Donovan v. Barnett*, 27 Mo. App. 460. (2) The exceptions to the report of the referee must be filed within four days, and, if not so filed, judgment should be rendered on the

report with like effect as upon a special verdict. R. S. 1879, sec. 3622. Defendant's exceptions were not filed till fifteen days in term, after the report was filed, and the exceptions should have been overruled, and the report confirmed and judgment rendered thereon in favor of plaintiff. *Reinecke v. Jod*, 56 Mo. 386. (3) That the services sued for were rendered by plaintiff at the special instance and request of the defendant, Sarah Kane, and, in matters pertaining solely to her separate estate, cannot be questioned. The services being so rendered, her separate estate was bound therefor. Contracts of Married Women (by Kelley) 247, 244, 240–1; *DeBaum v. Van Wagner*, 56 Mo. 348–9; *Myers v. Van Wagner*, 56 Mo. 115, 116; *Siemers v. Kleedburg*, 56 Mo. 201; *Bank v. Robidoux*, 57 Mo. 446, 450–1; *Bank v. Taylor*, 62 Mo. 340. (4) A person may recover on a *quantum meruit* for services rendered on a void contract. *King v. Welcome*, 5 Gray, 41; *Ham v. Goodrich*, 37 N. H. 185; *King v. Brown*, 2 Hill, 485; *Montague v. Garnett*, 3 Bush. 297; *Graham v. Graham's Ex'r*, 34 Pa. St. 475; *Day v. Railroad*, 51 N. Y. 583.

*Harding & Buller*, for the respondent.

Plaintiff's first point that the judgment should be reversed because the defendant's exceptions to the referee's report were filed too late is not well taken. In an equity suit or in any case that might be referred under section 3606, Revised Statutes, the trial court should review the evidence, and, if it does not sustain the referee's findings, should set the same aside and render judgment according to the evidence whether there are any exceptions or not. *Shore v. Coons*, 24 Mo. 556; *O'Neil v. Capelle*, 62 Mo. 202; *Smith v. Paris*, 70 Mo. 615; *Ely v. Ownly*, 59 Mo. 437; *Caruth v. Welter*, 91 Mo. 484. The rule that report of a referee stands on same footing as a verdict of a jury applies only to actions at law. *Dunlap v. Elk Club*, 25 Mo. App.

180.    Even in a case at law and a jury trial, the trial court may, in its discretion, allow a new trial where the motion was filed too late. *Williams v. Court*, 5 Mo. 248. The facts in this case do not show any such contract or liability. To hold the separate estate of the wife liable must be by her contract at the time the separate estate exists. *Gabriel v. Mullen*, 30 Mo. App. 464; *Bank v. Robidoux*, 56 Mo. 446. The contract plaintiff claims in this case was made in Pennsylvania before the farm was bought, and there is not the slightest evidence that Mrs. Kane had any separate estate prior to the time this farm was bought and deeded to Clarke in trust for her. The judgment in this case should be affirmed, because the appellant has failed to preserve the stipulation of reference. Every presumption is in favor of the action of the trial court. *Stone v. Pennock*, 31 Mo. App. 544. Appellant's abstract of the evidence is too meager to give this court any idea of the merits of the case or errors complained of. *Foster v. Nowlan*, 4 Mo. 23; *Guinn v. Boas*, 31 Mo. App. 131; *In re Assignment Redding Bros.*, 31 Mo. App. 415; *Hyatt v. Woolf*, 22 Mo. App. 191; *Housman v. Hope*, 20 Mo. App. 193; *Coy v. Robinson*, 20 Mo. App. 452; *Goodson v. Railroad*, 23 Mo. App. 76.

THOMPSON, J., delivered the opinion of the court.

This is a suit in equity to subject the separate estate of a married woman to the payment of an indebtedness alleged to be due to the plaintiff from the married woman, for services rendered at her special instance and request and for the benefit of said estate. The petition alleges "that plaintiff, at the special instance and request of said defendant Sarah Kane, and for the benefit of her separate estate, rendered her his labor and service for five months in the year 1876, and also continuously from April 1, 1877 to July 15, 1881, amounting to fifty-six and one-half months, and that said services were of the value of twenty dollars per

month, amounting to eleven hundred and thirty dollars."
The petition also alleges that "between January 9,
1878, and July 15, 1881, he (plaintiff) made improve-
ments on the lands, that constituted a part of said
Sarah Kane's separate estate, of the value and to the
cost of one hundred dollars, and during the period last
aforesaid he (plaintiff) boarded hands, that were
engaged in labor upon her said separate estate, to the
amount and value of one hundred dollars; that all of
said labor and services and improvements and board,
amounting to thirteen hundred and thirty dollars, were by
plaintiff rendered, done and performed, for the use and
benefit of said Sarah Kane's separate estate, and at her
instance and request, and that she thereby bound her
separate estate for the payment thereof; and that no
part of said sum has been paid. That the whole
of said sum of thirteen hundred and thirty dollars is
still due and owing to plaintiff, and is a charge upon
the separate estate of said Sarah Kane. Wherefore,"
etc.

The answer of J. P. Kane admitted that he was the
husband of Sarah Kane, and denied each and every
other allegation of the petition. The answer of Sarah
Kane admitted that she was the wife of J. P. Kane,
denied each and ever other allegation of the petition,
and set up as a counter-claim that the plaintiff was
indebted to her in the sum of $1,794.77, for the use and
occupation of the farm in Lawrence county, Missouri,
for three years at two hundred dollars per year; for
money had and received by the plaintiff for the use of
the defendant; for money lent by the defendant to the
plaintiff; for goods and property sold by the plaintiff
belonging to the defendant and appropriated to his own
use; and for boarding himself (sic) by defendant follow-
ing with an itemized statement of the counter-claim.
There was a reply putting in issue the new matter and
pleading the statute of limitations as to such of the
items as had not accrued within five years.

By a stipulation of the parties the cause was referred to a referee; but the stipulation is not on file, and the record entry does not state the scope of the reference. But from the fact that the referee filed a report disposing of all questions in controversy both of law and fact, and from the fact that the exceptions to the report did not challenge it as being in any respect outside of the scope of the order of reference,—we may conclude that it was a full reference to try and dispose of all questions both of law and fact. The report of the referee made a finding, and recommended a judgment in favor of the plaintiff, in pursuance of the prayer of the petition, for the sum of $789.24, the same to be a charge upon the separate estate of the defendant Sarah Kane. The defendants filed exceptions to this report, and, on the same day, the plaintiff filed a motion to confirm the report and for judgment in pursuance thereof. These motions were taken up and argued on their merits, and the court set aside the report, and, on consideration of the evidence reported by the referee with the report, rendered judgment for the defendants, dismissing the plaintiff's petition. From this judgment the plaintiff prosecutes the present appeal.

Pending the proceedings the plaintiff has died, and the cause has been revived in the name of his administratrix, Bridget Clarke. The defendant J. P. Kane has also died, leaving the defendant Sarah Kane, against whom alone substantial relief is sought, as the sole defendant. For convenience, the parties are designated in this opinion as they stood at the commencement of the action,—the word plaintiff referring to the original plaintiff Anthony B. Clarke, and the word defendants referring to the defendant Sarah Kane and J. P. Kane.

I. Before proceeding to an examination of the merits, it is necessary to dispose of a technical objection raised by the plaintiff, which is that the defendant's exceptions to the report of the referee were not filed

within four days after the filing of the report, as required by section 3622, Revised Statutes, and were not filed until fifteen days after the filing of the report. This objection may be disposed of by two observations. The first is that the bill of exceptions neither shows the date of the filing of the report nor the date of the filing of the exceptions to it. It is true that minute entries of the clerk, copied into the transcript but not incorporated in the bill of exceptions, show that the exceptions to the report were filed fifteen days after the filing of the report. But it is a well-settled rule of procedure in this state that the clerk cannot make a record. For instance, the minute entry of the clerk, showing the date at which a motion for a new trial was filed, is not evidence of the fact, but it must appear by the bill of exceptions that the motion was filed within the time prescribed by the statute, or it will not be deemed to have been filed in time. Thus technicality meets technicality and disposes of this objection. But there is another ground equally fatal to it. No objection was made, at the time when the exceptions to the report were filed, to the filing of such exceptions on the ground that more than four days had elapsed since the filing of the report, and no exception was saved to the filing of them on that ground. On the contrary, the report was taken up and considered on the exceptions of the defendants and on the motion to confirm it made by the plaintiff, and, on the merits of the case, the court, after hearing argument, rendered the decree above stated; and the objection, now put forward, that the exceptions were filed out of time, did not make its appearance until the motion for new trial, after the plaintiff had failed on the merits. It was then too late. Parties cannot make their objections, and take their exceptions for the first time, in a motion for new trial.

II. This brings us to the merits of this controversy, as exhibited by the evidence filed by the referee with

his report. This evidence consists of some five hundred pages of testimony and exhibits. But it has been carefully considered, and will now be disposed of as briefly as possible.

The parties are all natives of Ireland. The plaintiff is the brother of the defendant, Sarah Kane, and the defendants, Sarah Kane and J. P. Kane, are husband and wife. They were married in Ireland in 1859, and soon after removed to this country. After some changes they finally settled in Scranton, Pennsylvania, where Mr. Kane, first alone, and afterwards with his daughter, pursued the occupation of school teacher, and Mrs. Kane kept boarders. By industry and frugality they gradually accumulated about eighteen hundred dollars in money, besides a house and lot, vested in Mrs. Kane, which for several years yielded a rental of ten dollars a month, and afterwards of five dollars a month. They had a large family of children to support.

The plaintiff remained in Ireland and married there. He came to this country in 1875, and from that time on he and his family became, more or less, a charge upon the benevolence of his sister and brother-in-law, these defendants. They boarded him for several months when he was out of employment, for which they received no remuneration. At his earnest solicitation, they sent a draft of five pounds to his family in Ireland, which then cost thirty-three dollars in our inflated currency. Finally, in the year 1876, the plaintiff, having a longing desire to see the great West, started toward the setting sun, in the character of an itinerant peddler, with a traveling companion named Thomas Clarke. They peddled as far as Chillicothe, in Missouri, where the plaintiff found himself stranded, and was obliged to appeal to the defendants for assistance, to which appeal they responded to the extent of a remittance of ten dollars. With this aid he went forward to Colorado, where he found himself again obliged to appeal to them for aid, and they again responded to the extent of

twenty dollars.   Here he parted with his co-adventurer and bent his steps toward the East, at the solicitation of the defendant, J. P. Kane, who was in trouble and in litigation at Scranton, to which place he returned.   On his way back he passed through Pierce City, in this state, where he had seen a farm which was for sale, known as the Legrand farm.   Of this farm he brought a glowing account to his brother-in-law and sister, and according to their testimony expressed the belief that, if he were on the farm, he could make five hundred dollars a year off it.   They finally concluded to send him back to Pierce City to purchase the Legrand farm, or some other farm in that vicinity, under the arrangement that he should move upon it and occupy it with his family as soon as they could be brought over from Ireland.

To facilitate this enterprise, they placed in his hands three hundred dollars, and sent him to Pierce City.   They also advanced to him seventy-three dollars to bring his family to this country, and this money was expended in bringing them over.   He went to Pierce City, and, after examining many farms and spending considerable time in negotiations and inquiries, during which time he was in active correspondence with his brother-in-law at Scranton, he, or rather they, for the final decision was made by them, decided upon the purchase of the Legrand farm for fifteen hundred dollars in cash, and one thousand dollars payable in five equal installments, in one, two, three, four and five years, the deferred payments drawing interest at seven per cent. per annum.   They forwarded fifteen hundred dollars in currency to him by express, and with this he paid the cash portion of the purchase price, and took a deed for the land, by which the title was vested to him in fee, but in trust for the sole and separate use of the defendant Sarah Kane.   With what remained of the three hundred dollars, with which they had furnished him when he left Scranton, he purchased a team and utensils

and prepared himself, as best he could, to work the farm. It was a partly improved farm, having a log house and buildings upon it. When possession was delivered to him there was a harvested crop upon it, but it did not turn out according to his expectations. During the succeeding three years, 1878, 1879 and 1880, he made almost nothing on the farm, a circumstance attributable, no doubt, in part to his insufficient equipment at the commencement, in part to his want of experience as a farmer, and in part to unfavorable weather. They were obliged to advance more money to him to assist him in getting along, and also to pay the interest and meet one of the deferred payments of the purchase money. The correspondence between him and J. P. Kane, most of which is in evidence, shows that the latter continuing his occupation of school teacher in Pennsylvania and supporting his large family, was struggling very hard to save up and forward to the plaintiff every dollar he could, having the fullest confidence in him and being in a continual state of fear that the farm would be lost by reason of not making the deferred payments. In 1880, Mrs. Kane went out to Pierce City, and was coldly received by her brother and his wife. According to her testimony, she succeeded in exacting from him a promise that he would pay them one hundred and seventy-five dollars a year for the rent of the farm while he stayed on it, which would be seven per cent. per annum on twenty-five hundred dollars, the total investment in the farm; which agreement, if ever made, he finally repudiated. In 1881, the defendant, with his wife and family, removed from Pennsylvania to Pierce City, without advising the plaintiff that they were coming, and went immediately into the house, and occupied it jointly with the plaintiff and his family. A quarrel ensued, and, as we infer from the testimony, the defendants were obliged to resort to an action of ejectment to recover the farm, and were obliged to bring an action or

actions of replevin to recover the personal property on the farm, which had been either purchased with money which they had forwarded to the plaintiff, or which consisted of the increase of property so purchased. The plaintiff, while thus occupying the farm, expended some labor in improving a portion of the land, by removing sprouts and stones from it. In his petition as above seen, he makes a claim of one hundred dollars for improving the land; but there is no evidence in the record as to the value of such improvements. Assuming, however, that it was of the value charged for in the petition, it would still be much less than the moneys which the defendant had advanced to him and which had been expended for his personal use.

This preliminary statement brings us to the conflicting evidence as to the terms of the contract under which the plaintiff purchased the farm, took possession of it, lived upon it, and cultivated it. The plaintiff's version of the contract is thus stated in his own language, testifying as a witness: "I was to have half of the farm and half of everything belonging to it. There was no written contract whatever between us, and no agreement to keep any account or record of anything, or keep the letters, or account for moneys. I was to have the money and do what I pleased with it." The defendants' version of the contract is thus given in the testimony of Mrs. Kane: "My husband told him he would assist him all he could; that, if he came and bought the Legrand farm for us, he could have the use of it for such time as we did not need it, by paying two hundred dollars a year for the use of the farm, or the money so invested, while he used it for his benefit." The defendants' version of the contract is also given in the testimony of Mr. Kane: "I will here state there was no proposition or contract, either verbal or in writing, in the year 1876, that Clarke was to have any portion or part of any farm that might be purchased for Mrs. Sarah Kane. There was no talk about such a

thing in the year 1876. * * * I suggested to him the propriety of going out and purchasing the Legrand farm for Mrs. Kane. Mrs. Kane said to Clarke for him to go and purchase the Legrand farm, as he might live on it until such time as we would need it, by paying about two hundred dollars a year for its use, which he then considered reasonable ; he having previously stated that he could make five hundred dollars a year on it if he had it."

The first finding of fact made by the referee was "that about the first of April, 1877, the plaintiff, Anthony B. Clarke, commenced to labor for the defendant, Sarah Kane, at her instance and request, *without any agreement as to compensation.*" This is the basis of the succeeding findings of the referee. This finding is not only not supported by any evidence in the case, but, as above seen, it is contradicted by the evidence of both parties. The plaintiff's evidence, briefly, is that he was to buy the land with the money advanced by the defendants, was to move on it, cultivate it and live upon it and have half of it. The defendants' evidence is that he was to buy the land and move on it, yielding them a rental of two hundred dollars a year, or thereabouts, while they allowed him to live on it. The theory on which this action is brought seems to be that, as the contract which was really made was broken by the defendants, the plaintiff can abandon that contract and recover upon an implied *assumpsit* the reasonable value of his services. Such is not the law. There can be no recovery on an implied contract in opposition to an express contract in force fixing the rights of the parties. *Christy v. Price*, 7 Mo. 430, 433 ; *Suits v. Taylor*, 20 Mo. App. 166, 173 ; *Kansas City Planing Mill Co. v. Brundage*, 25 Mo. App. 268 ; *Davidson v. Bierman*, 27 Mo. App. 655.

In *Ashbrook v. Dale*, 27 Mo. App. 649, 654, the principle was conceded, *arguendo,* "that, where an express contract fails for informality, a party may still

recover on a contract, implied by the law, that the other party will pay a reasonable compensation for the benefit received." But this principle cannot avail to give the plaintiff a right of action, on an implied *assumpsit*, for his work and labor on the farm of Mrs. Kane in this case. First, it is not at all clear that this contract, assuming that the plaintiff's version of it is true, has failed for informality. It does not appear, reasoning from its terms, that there is any insuperable obstacle in the way of his enforcing a specific performance of the contract, provided he can get a judge, sitting as a chancellor, to believe his version of it. Parol evidence will avail to establish a resulting trust in land, provided the evidence is clear and satisfactory. If in this case the plaintiff could not enforce this contract according to what he claims to be its terms, it must be ascribed to his own folly in not having it reduced to writing. In the second place, there is no evidence of any benefit accruing to Mrs. Kane from the work and labor done by the plaintiff on the farm for which he prosecutes this action—none whatever. He claims to recover for services as a farm laborer, at the rate of twenty dollars a month, during all the time that he resided upon, took care of and cultivated the farm. But the defendants never got a dollar out of it during all this time, except some personal property which they obtained in 1881, when they took possession, and also what was saved of the crop of that year, which was of little value,—all of which was less in value than the three hundred dollars, which they had furnished the plaintiff at the outset, and the money which they had advanced to him for his own personal use. During all this time he had the use of the farm *gratis* for the support of himself and family. As already observed, there is no evidence as to the extent to which he improved or bettered the land ; but giving him what he claims for such improvements in his petition, and it, together with

the personal property and the crop of 1881, would not equal the money advanced to him by them for his personal use while he was in the occupancy of the land.

This consideration renders it unnecessary for us to express an opinion upon the weight of the evidence adduced by the contending parties in support of their respective versions of the contract. The plaintiff's statement is supported by the testimony of four witnesses as to statements made to them by the defendants after they had arrived at Pierce City, which statements they deny. The letters of the defendant J. P. Kane, who, as agent for his wife, had charge of the transaction, more than fifty in number, written from his home in Pennsylvania to the plaintiff at Pierce City, add some color to the plaintiff's version of the transaction; but there is not a line in these letters, nor is there a scrap of writing, which exhibits the contract according to the version of either party; and after the year 1880, when the period of controversy commenced between the parties, we find nothing in their correspondence hinting at the plaintiff's version of the contract. On the contrary, in his letter of February 21, 1881, he gives a statement of the receipts from crops and expenditures of the preceding year, showing a balance in his hands of $104.10, which he offers to turn over to the defendants, together with a considerable list of personal property. When the defendants arrived at Pierce City, Mr. Kane demanded this money of the plaintiff, and he refused to turn it over, on the ground that his wife had it, and would not give it up. This led to a disturbance, and from this time on the parties were enemies, and a succession of law suits followed. It should seem that, if the plaintiff's version of the contract were true, it would crop out in some of the correspondence which took place after the *stress* between the parties began. It is true that many of the earlier letters of Mr. Kane to the plaintiff read as though there had been an understanding that

the plaintiff was to have some interest in the farm beyond that of a mere renter.

On the other hand, we have the positive testimony of both the defendants that no such agreement was ever made or talked of, and the defendant J. P. Kane testifies that he never heard of it until this action was brought. This testimony is supported by the inherent improbability of any such arrangement ever being made. These two defendants had saved this small sum of money by a long course of laborious frugality. If we may credit the letters of Mr. Kane to the plaintiff, which we understand to have been put in evidence by the plaintiff and to be now relied on by him, we must conclude that during most of the period while plaintiff was in the occupancy of the farm, Mr. Kane was working and pinching and saving to the utmost to get a little money to forward to him to meet his wants, to assist him in working the farm, and to prevent the farm being taken from them for the unpaid purchase money. It appears that the defendants had invested their all in this venture; it seems highly improbable that they would invest their all in a venture on the basis of giving half of it to their dependent relative at the very outset. If he was to have half of the land and personalty, it would have been perfectly simple to have had the deed made in such a form as to express that intent, or to have had it expressed in some other writing. In dealing with a matter so important that would be the most obvious suggestion of prudence.

To establish the existence of an arrangement so improbable the evidence ought to be as clear and cogent as that required by courts of equity to establish a resulting trust—especially where it is sought to charge an indebtedness upon the estate of a married woman. On the whole, the equity seems to be in favor of the defendants rather than in favor of the plaintiff. He has had the use of their farm for the support of himself and family, rent free for three or four years. He has had considerable money for his personal use which they have

advanced to him.  He has never returned anything to them, except what they got by legal process in 1881; and, if he has bettered the land, the betterment is slight and inconsiderable, and there is no evidence as to its value.

The judgment will be affirmed.  All the judges concur.